The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Deluca, with modifications.
 RULING ON MOTION TO ADD ADDITIONAL EVIDENCE
At the hearing before the Full Commission, counsel for the plaintiff made a motion to admit additional evidence into the record in the form of records from Dr. Catlin that were compiled after his deposition. Counsel for the defendants would not stipulate to the records without the opportunity to cross-examine Dr. Catlin regarding their contents. Thus, the Full Commission, in its discretion, hereby DENIES plaintiff's motion to admit additional evidence into the record in the form of records from Dr. Catlin that were compiled after his deposition.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as law the following, which were entered into by the parties as
 STIPULATIONS
1. On January 11, 2003, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On January 11, 2003, the plaintiff was an employee of Defendant-Employer.
3. On January 11, 2003, the plaintiff sustained injury to his back by specific traumatic incident, arising out of and in the course of his employment.
4. The average weekly wage of the plaintiff is $916.36, with compensation rate of $610.91.
5. The plaintiff has not returned to work for the defendant-employer since January 11, 2003.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of hearing before the Deputy Commissioner, the plaintiff was forty-eight years of age, having a birth date of June 3, 1956. The plaintiff attended high school through the eleventh grade. As an adult, most of the plaintiff's work experience has been as a truck driver.
2. In April, 2000, the plaintiff sustained an injury to his back while working for US Express, which resulted in surgery to his back in October 2000. The surgery, a cage fusion at the L5-S1 level, was performed by Dr. Paul Broadstone. The plaintiff convalesced for about six months and recovered well from his surgery. When Dr. Broadstone released the plaintiff from this injury on May 23, 2001, he was seventy-five percent better. A functional capacity evaluation performed on April 25, 2001, indicated the plaintiff was at the medium category of physical demand and Dr. Broadstone thought he could return to work as a truck driver.
3. In August 2001, the plaintiff became employed at Epes Transportation Services, Inc., as a truck driver. Prior to his injury on January 11, 2003, the plaintiff had had no significant problems with his back since his release from Dr. Broadstone in May 2001, and, had perfect attendance at work for defendant-employer for the entire year of 2002.
4. On January 11, 2003, the plaintiff sustained a compensable injury by accident to his back when the seat of the eighteen-wheeler he was operating suddenly lost compression, slamming the plaintiff's coccyx down to the floor of the cab.
5. The defendants have admitted the compensability of the plaintiff's claim and have paid both medical and indemnity benefits.
6. The plaintiff went to Eastridge Emergency Room on the date of his injury. He was assessed with x-rays, and released. When the plaintiff's back pain failed to remit, he was referred to Dr. Schultz. Dr. Schultz referred the plaintiff to Dr. Broadstone, an orthopedic specialist. Dr. Broadstone recommended a course of physical therapy, but the plaintiff discontinued the therapy after two visits because it caused him significant pain.
7. Dr. Broadstone also recommended an analgesic and anti-inflammatories. Dr. Broadstone's diagnosis was myofascial pain, degenerative disk disease, and discogenic pain. He obtained a discogram which confirmed his diagnosis of discogenic pain. The discogram was positive at L2-L3, L3-L4 and L4-L5.
8. On April 21, 2003, when the plaintiff failed to improve following conservative treatment, Dr. Broadstone recommended surgery for the plaintiff. Specifically Dr. Broadstone recommended an inner-body fusion at L4-L5 through a posterior approach.
9. Dr. Broadstone last saw the plaintiff on April 21, 2003, and then referred him to Dr. Catlin at the Chattanooga Center for Pain Management.
10. Dr. Broadstone does not see any clear-cut relationship between the plaintiff's need for this surgery and his prior injury of 2000.
11. Dr. Broadstone opines that the injury of January 11, 2003, is a significant cause for the surgery he recommended in 2003 for the plaintiff.
12. Dr. Broadstone states that the surgery he has recommended is warranted and necessary to effect a cure or to improve the plaintiff's condition.
13. The main purpose of this surgery is to decrease the plaintiff's pain so that he can increase his function and his general condition.
14. Dr. Broadstone also agrees with the modalities recommended by Dr. Catlin for the plaintiff, which include: a smoking cessation program, blood work due to the medications he is taking, and a psychological evaluation for the plaintiff's anxiety and depression.
15. Dr. Broadstone believes the delay for surgery is causing a worsening of the plaintiff's condition, as well as a loss of function and overall de-conditioning.
16. In the view of Dr. Broadstone the benefits of this surgery to the plaintiff outweigh the risks to him.
17. According to Dr. Broadstone, the fact that the plaintiff had a good result with the previous back surgery in 2000 is a positive indication he will have a good result from the recommended surgery.
18. Dr. Roger W. Catlin has treated the plaintiff since April 7, 2003, when he performed a five-level discogram from T12-L1 through L4-5.
19. Dr. Catlin also believes the accident on January 11, 2003, significantly exacerbated the plaintiff's symptomatology.
20. Dr. Catlin has treated the plaintiff by providing psychological support, prescribing medications, and giving him injections.
21. It is Dr. Catlin's opinion that the surgery which Dr. Broadstone recommended is necessary to reduce the plaintiff's pain to the point he can return to a functional lifestyle and reduce his utilization of narcotic medications.
22. Dr. Catlin has ordered a referral for the plaintiff for a psychological evaluation and treatment, as well as a back brace, smoking cessation patches, bone growth stimulator and blood work necessitated because of the medications he has been on for many months.
23. In his deposition, Dr. Catlin expressed a preference for the three level fusion. However he testified, "I think he needs fusion surgery, whether it's one level or three levels. You know, I will leave it up to the orthopedist who is going to take the responsibility for that surgery and for its outcome."
24. Dr. S. Craig Humphreys examined the plaintiff on January 13, 2004, as a second opinion to that of Dr. Broadstone at the request of the carrier.
25. Dr. Humphreys reviewed the medical records and noted that Dr. Broadstone had recommended a single-level fusion.
26. He also noted that the discogram was markedly positive, being concordant at several levels, including L2-3, L3-4 and L4-5. Dr. Humphreys testified, "I think, you know, that if the patient is educated and they understood the risk or benefits of, you know, a one-level fusion versus a three-level fusion, then the patient has every right to make the decision that they feel is best for them."
27. Dr. Humphreys also states, "I think what Dr. Broadstone is recommending (referring to the fusion surgery) is certainly within the bounds of, you know, normal practice."
28. Dr. Humphreys would recommend a three-level fusion at L2-3, L3-4, and L4-5 for the plaintiff.
29. Dr. Humphreys' opinion is that surgery, either a three-level fusion or a one-level fusion, is reasonably required to effect a cure, provide relief or lessen the plaintiff's period of disability. However, Dr. Humphreys did not specifically disagree with the recommendation by Dr. Kerns that the plaintiff should participate in an active functional restoration program.
30. Dr. Humphreys is of the opinion that the need for this surgery is due in whole, or to a significant degree, to the plaintiff's injury at work on January 11, 2003.
31. Dr. Humphreys is also in agreement with treatment modalities recommended by Dr. Catlin, which include: smoking cessation patches; blood work due to the medicines the plaintiff is taking; an Aspen Quick Draw Brace; bone growth stimulator; and a psychological evaluation and treatment for the plaintiff's anxiety and depression secondary to his chronic pain syndrome.
32. Dr. Humphreys would defer to Dr. Broadstone as to what type of fusion would be most appropriate for the plaintiff.
33. Dr. J. Paul Kern has a specialty in physical medicine and rehabilitation. He does not perform surgery and practices medicine in Indiana. He reviewed the records of the plaintiff, at the direction of the insurance adjuster, Tracie Cosher.
34. In light of the plaintiff's continuing symptoms, Dr. Kern recommended that the plaintiff participate in an active treatment program. He defined this as a functional restoration program, which is in large part an extensive work conditioning program. Dr. Kern disagreed that a fusion would be likely to effect a cure, provide relief, or lessen the plaintiff's period of disability.
35. Dr. Kern agrees with Dr. Catlin's referral of the plaintiff to a psychologist for a psychological evaluation and for a liver blood profile, considering the medication he is currently taking, and smoking cessation patches.
36. Dr. Kern has not examined the plaintiff or spoken to any of the plaintiff's treating physicians.
37. The defendants have denied authorization of surgery, smoking cessation patches, blood work, Aspen Quick Draw Brace, bone growth stimulator, and psychological evaluation and treatment for the plaintiff's anxiety and depression secondary to his chronic pain syndrome.
38. The plaintiff testified that his back pain has worsened, at times feeling like a knife sticking in his back, with tingling running up and down his legs, and that it is made worse by standing, walking, or sitting. It is lessened by lying on his back with his legs elevated on a pillow and by applying ice or heat. He remains unable to return to work and spends much of his time in bed, lying down trying to get some relief from his pain.
39. The Full Commission finds that the surgery (whether a one-level or three-level fusion); smoking cessation patches; blood work/liver profile Aspen Quick Draw Brace; bone growth stimulator, and psychological evaluation, are reasonably required to provide the plaintiff relief or to lessen his period of disability. The defendants' refusal to authorize and pay for additional medical treatment, to include: surgery (whether a one-level or three-level fusion); smoking cessation patches; blood work/liver profile, Aspen Quick Draw Brace; bone growth stimulator; and psychological evaluation and treatment is not supported by the greater weight of the evidence. In reaching these conclusions, the Full Commission notes that three of the four doctors who were deposed recommended surgery of some kind. Greater weight is given to the testimony of Dr. Broadstone, the surgeon most familiar with the plaintiff's medical history and within whom both Dr. Caitlin and Dr. Humphreys expressed great confidence, as opposed to Dr. Kerns, who did not examine the plaintiff or speak with any doctor that treated the plaintiff.
40. In view of the differing opinions expressed by the four doctors who were deposed in this matter, the Full Commission finds that the defendants reasonably defended this matter, and no award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 is warranted. However, because this appeal was brought by the insurer, and the Full Commission has continued benefits as provided herein, the Full Commission finds that a reasonable attorney's fee in the amount of $3,000.00 is warranted pursuant to N.C. Gen. Stat. § 97-88.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The preponderance of the evidence shows that the plaintiff's admittedly compensable injury aggravated his pre-existing disc disease and he has unrelenting pain. The plaintiff's request for additional medical treatment, as recommended by his treating physicians, is reasonable and appropriate. N.G. Gen. Stat §§ 97-25; 97-25.1.
2. In view of the differing opinions expressed by the four doctors who were deposed in this matter, the Full Commission finds that the defendants reasonably defended this matter, and no award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 is warranted.
3. Section 97-88 of the North Carolina General Statutes provides:
 If the Industrial Commission at a hearing on review or any court before which any proceedings are brought on appeal under this Article, shall find that such hearing or proceedings were brought by the insurer and the Commission or court by its decision orders the insurer to make, or to continue payments of benefits, including compensation for medical expenses, to the injured employee, the Commission or court may further order that the cost to the injured employee of such hearing or proceedings including therein reasonable attorney's fee to be determined by the Commission shall be paid by the insurer as a part of the bill of costs.
Id. Because this appeal was brought by the insurer, and the Full Commission has continued benefits as provided herein, the Full Commission finds that a reasonable attorney's fee in the amount of $3,000.00 is warranted pursuant to N.C. Gen. Stat. § 97-88.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The defendants shall authorize and pay for ongoing medical treatment for the plaintiff to help control or improve his pain, including surgery (whether a one-level or three-level fusion); smoking cessation patches; blood work/liver, Aspen Quick Draw Brace; bone growth stimulator; and psychological evaluation and treatment, and other treatment as may be recommended by Dr. Broadstone and/or Dr. Catlin.
2. The defendants shall pay to the plaintiff's counsel a reasonable attorney's fee in the amount of $3,000.00 pursuant to N.C. Gen. Stat. §97-88.
3. The defendants shall pay the cost, including an expert witness fee of $400.00 to Dr. Humphreys, and $300.00 to Dr. Catlin, if not paid by prior order.
This 11th day of January 2006.
 S/ _______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/ ___________________ BUCK LATTIMORE CHAIRMAN
 S/ ___________________ PAMELA T. YOUNG COMMISSIONER